# United States Court of Appeals
## For the First Circuit

No. 07-1334

UNITED STATES OF AMERICA,

Appellee,

v.

RYAN BUTTERWORTH,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Boudin, Chief Judge,

Selya and Stahl, Senior Circuit Judges.

John Paul DeGrinney, by appointment of the court, with whom DeGrinney Law Offices was on brief for appellant.
F. Mark Terison, Senior Litigation Counsel, with whom Paula D. Silsby, United States Attorney, was on brief for appellee.

December 20, 2007

**BOUDIN**, <u>Chief Judge</u>.  Bobbi Jo Barker tipped off the police that her boyfriend, Michael Lovely, was engaged with Ryan Butterworth in a drug trafficking partnership carried on from an apartment shared by Lovely and Butterworth in Westbrook, Maine. Agents searched trash bags outside the building, found evidence of drugs, and--after obtaining a warrant--searched the Lovely-Butterworth apartment, finding  bags of marijuana and crack and a scale bearing drug residue.

The two men were indicted for federal drug offenses and a joint trial began in federal district court in Maine.  After the first day, Lovely changed his plea to guilty and Butterworth moved for a mistrial; the district court instead offered a curative instruction to the jury.  The evidence at trial against Butterworth was presented through the agents who had conducted the "trash pull" and search, and through witnesses who had observed or participated in the drug dealing.

The latter included Destiny Doucette, a former fiancée of Lovely; Adam Ruffino, a high school student and customer of Butterworth; Barker, who had initially alerted the authorities; and Fred McMann, a subordinate participant in the conspiracy who testified pursuant to a plea bargain.  These witnesses testified to seeing the drugs in the Westbrook apartment, to observing or participating in sales made by Butterworth and to further details concerning the venture.

Less forthcoming testimony was presented through Crystal Alexander, a sometime-girlfriend of Butterworth. Alexander had testified before the grand jury as to the workings of the operation and Butterworth's central role in it, based on her firsthand observations of the drugs and transactions. At trial, under arrest as a material witness and testifying under a compulsion order, she was much less cooperative and her grand jury testimony was used by the prosecution both to refresh and as evidence.

Butterworth was convicted on two drug trafficking counts: possession with intent to distribute crack cocaine and marijuana, and conspiracy to do the same. 21 U.S.C. §§ 841(a)(1), 846 (2000). Based on the quantities of drugs involved and a prior drug conviction, he was sentenced to the statutory mandatory minimum of 240 months in prison. Id. § 841(b)(1)(B). He now appeals, challenging both the convictions and the sentence.

Butterworth first objects to the trial court's decision to allow Alexander's grand jury testimony to be read into the record, arguing that this violated federal evidence rules and the Sixth Amendment's Confrontation Clause. The former, with exceptions, bar as hearsay statements made by "the declarant" outside the courtroom. Fed. R. Evid. 801-06. The hearsay rationale is thin where the declarant is now present and can be cross-examined but traditionally the hearsay label still attaches absent an exception.

The Confrontation Clause, protecting the right to "confront" witnesses, was not traditionally viewed as a bar to hearsay testimony; but in recent years the Supreme Court has invoked it to preclude the use of "testimonial" out-of-court statements unless the absent declarant is unavailable and the defense had a previous opportunity for cross-examination. Crawford v. Washington, 541 U.S. 36, 68 (2004). The hearsay and confrontation bars often overlap but are not co-extensive.

The district court determined that Alexander's grand jury testimony was not hearsay under the federal definition, which excepts a statement if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition." Fed. R. Evid. 801(d)(1).

Statements made before a grand jury are "given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding." See United States v. Hemmer, 729 F.2d 10, 17 (1st Cir.), cert. denied, 467 U.S. 1218 (1984). So the issue is whether Alexander's grand jury testimony was "inconsistent" with her trial testimony. Consistency is necessarily a matter of degree so long as "people speak in nonmathematical languages such as English." United States v. Williams, 737 F.2d 594, 608 (7th Cir.

1984), <u>cert. denied</u>, 470 U.S. 1003 (1985).

Before the grand jury, Alexander testified that Butterworth sold "weed" and "crack or whatever it was." She described the partnership's formation to "foot more and make more"; her encouragement of Butterworth to sell crack because "that's where all the money is"; and her discovery that he had begun to do so, by his admission and the large sums he made. The crack was supplied by a man known alternatively as "X," "Xavier," and "J.D.," whom Alexander had met "ten, 11 times."

According to Alexander, Butterworth would meet the supplier in private, but would return with "a quarter" of crack--meaning a quarter ounce. Alexander claimed that Butterworth had boasted of earning "like, 1200 bucks a night" selling to customers "in the same building." She agreed with the government's description of "pretty constant traffic" through the apartment and acknowledged witnessing the sales.

At trial, Alexander contradicted her grand jury testimony on some ten occasions--for example, as to how much money Butterworth had ("a little money"); how many times she had met the crack supplier known as "X" ("three, four times"); how much crack Butterworth would receive ("not very much"); how frequent the sales were ("few times")--but on each occasion the prosecutor would ask her to refresh her recollection by examining the grand jury transcript.

Although Alexander would then somewhat reluctantly adopt her earlier grand jury answers, her trial testimony was peppered with claims that she did not know or could not remember the answers she gave to the grand jury. For example, when asked how much money Butterworth had earned from his crack dealing, she replied: "I don't know, 1200 bucks. I have no idea." When asked how much marijuana Butterworth's supplier would deliver per visit, she responded: "I don't know exactly. Quite a bit. . . . I don't remember, couple of ounces."

Further, she repeatedly denied remembering what she had told the grand jury ("I guess if that's what I said, then that's what I said. I don't remember what I said before at all. . . . [T]hat's why I have to keep reading that thing."). Under cross-examination, Alexander claimed that she had been under the influence of drugs when she testified to the grand jury. In response to a defense question she agreed that she couldn't even "vouch for what [she] said at the grand jury."

Alexander's trial testimony does not contradict her grand jury testimony in every respect, but testimony need not be "diametrically opposed or logically incompatible" to be considered inconsistent under the rule. Williams, 737 F.2d at 608. Even "evasive answers" or "silence" can be enough, United States v. Dennis, 625 F.2d 782, 795 (8th Cir. 1980), as can claimed memory loss, United States v. Distler, 671 F.2d 954, 958 (6th Cir.), cert.

denied, 454 U.S. 827 (1981)--particularly if the judge senses a reluctance to testify honestly, United States v. Mornan, 413 F.3d 372, 378-79 (3d Cir. 2005), as was plainly the case here.

The reason for so reading the rule is apparent. Prior testimony given under oath is (relative to unsworn statements) comparatively reliable but, where the witness is present at trial, consistent and forthcoming, the in-court testimony is preferred. Where instead the witness contradicts the prior testimony or purports no longer to remember it--possibly because of friendship or intimidation--the prior testimony is no longer redundant; the witness can still be questioned in court about its accuracy; and the balance favors its admission.[1]

There is one other wrinkle. Some of the grand jury testimony was heard when the government sought to refresh Alexander's memory on cross-examination, but the grand jury transcript itself was formally read into the record on government motion after she had stepped down. Butterworth says that she was therefore not "subject to cross-examination concerning the statement[s]" (as required by the evidence rule) because they were not admitted until after she left the stand.

_____

[1]The traditional common law rule did not allow prior inconsistent statements to serve as substantive evidence, but sustained criticism from the academy and the bench, United States v. De Sisto, 329 F.2d 929, 933-34 (2d Cir.) (Friendly, J.), cert. denied, 377 U.S. 979 (1964); Di Carlo v. United States, 6 F.2d 364, 367-68 (2d Cir.) (L. Hand, J.), cert. denied, 268 U.S. 706 (1925), led to the exception in the present Federal Rule of Evidence.

This gist of this argument is virtually the same as Butterworth's Confrontation Clause claim, and they can be considered together. Under modern Supreme Court precedent, admitting an out-of-court statement does not violate the clause "when the declarant appears for cross-examination at trial," Crawford, 541 U.S. at 59 n.9, because the Constitution requires only an opportunity for "full and effective cross-examination." California v. Green, 399 U.S. 149, 158 (1970).

Here, Alexander was present at trial and was available for cross-examination for the defense. The subject matter of the grand jury testimony was the focus of the government's direct examination, and the defense was free to cover the same subject matter on cross-examination (and did so). This is not a case where the defense has a legitimate claim of surprise. Accord Alexander v. Conveyors & Dumpers, Inc., 731 F.2d 1221, 1231 (5th Cir. 1984). Nor did the defense ask that Alexander be recalled when the grand jury testimony itself was offered.

Butterworth next says that a mistrial should have been granted when Lovely pled guilty. The main concern is that the jury, although not so informed, might have inferred that Lovely had pled guilty, confirming Butterworth's guilt in the joint enterprise; or, conceivably, the jury might have thought Lovely had been released because he was innocent and, in contrast, Butterworth kept in the case because of his guilt. But the threat of prejudice

in such a case varies with the facts, as does the value of curative measures employed.

Trials are filled with such dilemmas. The most familiar one is evidence that is admissible against one defendant and which does not mention the objecting co-defendant but tends to confirm the existence of the conspiracy. The trial judge has to manage the situation as best the judge can. Usually, resort is to a cautionary instruction. Formally, the test on appeal, if the district court's solution is challenged, is abuse of discretion. United States v. Pierro, 32 F.3d 611, 617 (1st Cir. 1994), cert. denied, 513 U.S. 1119 (1995).

In this case the trial judge told the jurors that "Mr. Lovely is no longer part of the trial" and that they "are not to speculate or surmise or guess in anyway whatsoever why." During closing instructions, the judge again emphasized that "Michael Lovely's absence from the trial is none of your concern." Butterworth does not say that different words should have been used; rather, that only a mistrial would avoid undue prejudice. The key term is "undue": balancing is part of the process.

The prejudicial inference in this case was not wholly obvious or dramatically prejudicial and was dwarfed by the powerful direct evidence against Butterworth. Given the trial judge's closeness to the scene, this court reverses a denial of a mistrial motion only under "extremely compelling circumstances." Pierro, 32

F.3d at 617; <u>see also</u> <u>United States</u> v. <u>Sepulveda</u>, 15 F.3d 1161, 1184 (1st Cir. 1993), <u>cert. denied</u>, 512 U.S. 1223 (1994). This case is not even close.

In another such episode, McMann (the smaller fish in the conspiracy who testified against Butterworth) was asked to describe the terms of his plea bargain. He claimed, apparently falsely, that he was testifying in exchange for government protection. Butterworth objected that the statement inaccurately implied that he had threatened a witness. Again, the district court denied the mistrial motion and instructed the jury to ignore the comment.

Here, the prejudicial inference is even thinner: there was no evidence of violence by Butterworth elsewhere in the trial and any threat could have come from a supplier. The district judge immediately told the jury that "there is no evidence that Mr. Butterworth has made any threats on the life" of McMann; and he instructed it to "disregard the statement." Such a swift and clear curative instruction was the right course, <u>Sepulveda</u>, 15 F.3d at 1184-85, and there was no error.

Finally, Butterworth challenges the 240-month statutory mandatory minimum sentence. Because that statute applied only as a result of the district court's calculation of drug quantity (a "judicially found fact"), Butterworth sees a violation of the Sixth Amendment principles adopted by the Supreme Court in relation to

sentencing in the now familiar Apprendi-Blakely-Booker trilogy.[2]
Yet (as Butterworth concedes) this panel cannot overturn prior
panels of this court rejecting just such an argument.

Our cases hold that so long as the applicable statutory
minimum (based on the judicially found facts) falls below the
default statutory maximum (based on the jury findings), the Sixth
Amendment is satisfied. United States v. Lizardo, 445 F.3d 73, 89-
90 (1st Cir.), cert. denied, 127 S. Ct. 524 (2006); United States
v. Goodine, 326 F.3d 26, 33 (1st Cir. 2003), cert. denied, 541 U.S.
902 (2004). The Supreme Court is free to alter what we take to be
existing law, but short of that only an en banc court in this
circuit could revisit the matter.

Lizardo and Goodine are satisfied in this case. The jury
found that Butterworth's crimes involved at least 5 grams of crack
cocaine, which (even ignoring his prior drug conviction) would
trigger a statutory maximum of forty years in prison. 21 U.S.C. §
841(b)(1)(B). He was sentenced to 240 months, the statutory
minimum given the conceded prior drug felony and the judge's
finding that more than 50 grams of crack was involved. Id. §
841(b)(1)(A).

The convictions and sentence are affirmed.

---

[2]Apprendi v. New Jersey, 530 U.S. 466 (2000); Blakely v.
Washington, 542 U.S. 296 (2004); United States v. Booker, 543 U.S.
220 (2005).